IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MALCOLM A. H., Jr.,<br><br>    Petitioner,<br><br>v.<br><br>CHARLES GREEN,<br><br>    Respondent. | HON. JOHN MICHAEL VAZQUEZ<br><br>Civil Action<br>No. 19-264 (JMV)<br><br>**OPINION** |

**VAZQUEZ, District Judge:**

**I.    INTRODUCTION**

Presently before the Court is Petitioner's *pro se* § 2241 habeas corpus petition challenging his ongoing immigration detention beginning in June of 2018. (the "§ 2241 Petition"). (DE 1.) By way of that pleading, Petitioner requests that this Court "order [that he receive] a constitutionally adequate, individualized hearing before an impartial adjudicator at which the Government bears the burden of establishing that Petitioner's continued detention is justified." (*Id.* at 12.) For the reasons stated herein, the petition is granted.

**II.    BACKGROUND**

Petitioner is a native and citizen of Trinidad and Tobago. (*See*, *e.g.*, DE 4-2.) He arrived in the United States on July 18, 1980, as a visitor, and thereafter became a lawful permanent resident on March 24, 1988. (*Id.*) On November 14, 2014, Petitioner began serving a ten-year sentence, which included a 42-month period of parole ineligibility, after being convicted in New Jersey Superior Court of manufacturing, distributing, or dispensing a controlled dangerous substance ("CDS"), in violation of N.J.S.A. § 2C:35-5A(1). (*See* DE 4-3 at PageID: 41.)

Thereafter, on or about June 4, 2018,[1] Petitioner was taken into custody by Immigration and Customs ("ICE"). (*See* DE 4-4.) He has been detained by immigration authorities ever since. Petitioner has, at all times throughout this period, been held pursuant to 8 U.S.C. § 1226(c);[2] this is due to his criminal history and in light of the fact that he has never been subject to a "final" order of removal. *See Leslie v. Att'y Gen.*, 678 F.3d 265, 268-270 (3d Cir. 2012). The record reflects that Petitioner's lone request to the immigration court for a custody redetermination on the mandatory nature of his detention, *e.g.*, that he is in fact eligible to be released on bond, was denied by Immigration Judge ("IJ") Mirlande Tadal on August 24, 2018. (DE 4-5.)

On January 22, 2019, IJ Leo A. Finston ordered Petitioner removed to Trinidad and Tobago and denied his related application for relief under the Convention Against Torture ("CAT"). (DE 4-6.) On February 11, 2019, Petitioner appealed the IJ's decision to the Board of Immigration Appeals (the "BIA"). (*See* DE 4-7.) The BIA dismissed that appeal on June 20, 2019. (*See*, *e.g.*, Admin. R., *Malcolm A. H., Jr. v. Att'y Gen.*, No. 19-2556 (3d Cir. July 25, 2019).) On July 5,

---

[1] The parties' submissions are inconsistent regarding the date Petitioner was formally taken into ICE custody. While Respondent's (the "Government's") answer indicates that ICE detained Petitioner on June 4, 2017 (*see* DE 4 at 1), Petitioner's habeas petition suggests that he has been detained by immigration authorities since June 6, 2018 only. (*See* DE 1 at ¶ 4.) Moreover, there does not appear to be any document in the record which conclusively establishes the date that Petitioner's immigration detention began. Based on the totality of the information in the parties' submissions, it fully appears that ICE did not formally assume custody of Petitioner until June of 2018. For purposes of this Opinion, the Court will presume that Petitioner's immigration detention began on June 4, 2018, which is the date he acknowledged receipt of the Department of Homeland Security's Notice of Custody Determination. (*See* DE 4-4.)

[2] Under § 1226(c), "[t]he Attorney General shall take into custody any alien" who is inadmissible or deportable on the basis of enumerated categories of crimes and terrorist activities. 8 U.S.C. § 1226(c)(1). By its terms, § 1226(c) does not entitle detainees to a bond hearing. Release is authorized "only if the Attorney General decides . . . that release of the alien from custody is necessary" for witness-protection purposes "and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding." *Id.* at § 1226(c)(2).

2019, Petitioner filed a Petition for Review ("PFR") in the United States Court of Appeals for the Third Circuit. (*See* PFR, *Malcolm A. H., Jr*, No. 19-2556 (3d Cir. July 5, 2019).) On July 5, 2019, the Third Circuit entered an order temporarily staying Petitioner's removal. (*See* Order, *Malcolm A. H., Jr*, No. 19-2556 (3d Cir. July 5, 2019).) The Third Circuit's temporary stay, as of today's date, remains in effect.

Petitioner filed his § 2241 Petition on or about December 31, 2018. (DE 1.) He asks this Court to order "a constitutionally adequate, individualized [bond] hearing before an impartial adjudicator at which the Government bears the burden of establishing that Petitioner's continued detention is justified." (*Id.* at 12.) The Government, by way of its March 4, 2019 response, avers that "Petitioner is not entitled to a bond hearing because section 1226(c) mandates that detention must continue until the completion of [immigration] proceedings." (DE 4 at 4.) Petitioner filed his reply on or about March 14, 2019. (DE 5.)

### III. ANALYSIS

Habeas relief may be extended to an immigration detainee who "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). As noted, Petitioner has, since June 4, 2018, been subject to mandatory detention pursuant to 8 U.S.C. § 1226(c). At issue here is whether Petitioner's 14-plus month period of immigration detention has now become so unreasonably prolonged as to render Petitioner's detention unconstitutional.

The Supreme Court first considered the constitutionality of prolonged detention pursuant to § 1226(c) in *Demore v. Kim*, 538 U.S. 510 (2003). The *Demore* Court determined that the statute was facially constitutional as "[d]etention during removal proceedings is a constitutionally permissible part of that process." *Id.* at 531. In reaching this conclusion, the Supreme Court noted that in most cases detention under the statute lasted only a month and a half and that even in cases

3

where an appeal was taken to the BIA, detention pursuant to § 1226(c) lasted an average of four months, indicating that detention under the statute was often brief and had a defined beginning and end point at the conclusion of removal proceedings. *Id.* at 529. Because the *Demore* Court found the statute constitutional, it rejected the petitioner's challenge even though he had spent a period of approximately six months in detention. *Id.* at 530. Thus, after *Demore* it was clear that detention for less than six months was insufficient to support an as-applied challenge to detention under the statute.

In *Diop v. ICE/Homeland Sec.*, 656 F.3d 221 (3d Cir. 2011), the Third Circuit considered whether a petitioner was entitled to a bond hearing nearly three years into his detention under § 1226(c). *Id.* at 223-26. The Third Circuit held that he was, notwithstanding that provision's lack of any such requirement. "[W]hen detention becomes unreasonable," the court reasoned, "the Due Process Clause demands a hearing, at which the Government bears the burden of proving that continued detention is necessary to fulfill the purposes of the detention statute." *Id.* at 233. The Third Circuit noted that *Demore* emphasized that "mandatory detention pursuant to § 1226(c) lasts only for a 'very limited time' in the vast majority of cases," and concluded that the result in *Demore* "may well have been different" if the petitioner's detention had been "significantly longer than the average." *Diop*, 656 F.3d at 233-34 (quoting *Demore*, 538 U.S. at 529 & n.12). The Third Circuit thus interpreted § 1226(c) to "contain[] an implicit limitation of reasonableness: the statute authorizes only mandatory detention that is reasonable in length." *Id.* at 235. Beyond that point – which can be determined only by a "fact-dependent inquiry," *id.* at 233 – the statute "yields to the constitutional requirement that there be a further, individualized, inquiry into whether continued detention is necessary to carry out the statute's purpose," *id.* at 235. The circuit court's interpretation of § 1226(c) relied in part on *Zadvydas v. Davis*, 533 U.S. 678 (2001), in which the

4

Supreme Court "read an implicit limitation into" 8 U.S.C. § 1231(a)(6) – which governs detention of aliens who have already been ordered removed – so that it "d[id] not permit indefinite detention." *Id.* at 689.

The Third Circuit again applied the *Diop* reasonableness requirement in *Chavez-Alvarez v. Warden York Cty. Prison*, 783 F.3d 469 (3d Cir. 2015). There, the circuit court held that because the petitioner's year-long detention under § 1226(c) had become unreasonable, he was entitled to a bond hearing where the government would bear the burden of "produc[ing] individualized evidence that Chavez-Alvarez's continued detention was or is necessary." *Chavez-Alvarez*, 783 F.3d at 474, 478. As in *Diop*, that conclusion resulted from the Third Circuit's "use of a balancing framework [that] makes any determination on reasonableness highly fact-specific." *Id.* at 474.

The Supreme Court's decision in *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018), however, overruled *Diop's* statutory interpretation of 8 U.S.C. § 1226(c). *Jennings* rejected the conclusion that § 1226(c) contains an implicit reasonableness limitation. *Id.* at 846-47. The Supreme Court noted that in *Demore*, it distinguished § 1226(c) from § 1231(a)(6) (the statute at issue in *Zadvydas*). *See id.* at 846. While detention under § 1231(a)(6) lacks a "definite termination point," § 1226(c) authorizes detention only until the conclusion of removal proceedings. *Id.* (quoting *Demore*, 538 U.S. at 529). *Jennings* holds that "§ 1226(c) mandates detention of any alien falling within its scope and that detention may end prior to the conclusion of removal proceedings only if the alien is released for witness-protection purposes." *Id.* at 847 (internal quotation marks omitted). *Jennings*, however, did not address the constitutionality of § 1226(c); the Supreme Court instead remanded to the Ninth Circuit to decide that question in the first instance. *Id.* at 851. *Jennings* therefore, says the Third Circuit, "[does] not call into question [its] constitutional holding

in *Diop* that detention under § 1226(c) may violate due process if unreasonably long." *Borbot v. Warden Hudson Cty. Corr. Facility*, 906 F.3d 274, 277-78 (3d Cir. 2018).

In sum, the constitutional holdings of *Diop* and *Chavez-Alvarez* call for a "fact-dependent inquiry requiring an assessment of all of the circumstances of any given case," to determine whether detention without an individualized hearing is unreasonable. *Diop*, 656 F.3d at 234; *see also Chavez-Alvarez*, 783 F.3d at 475 n. 7 (explaining "the highly fact-specific nature" of the balancing framework). Under this approach, district courts must determine whether an individual's detention has crossed the "reasonableness" threshold, thus entitling him or her to a bail hearing. Again, the reasonableness of detention depends on the facts of the detainee's individual case. *See Diop*, 656 F.3d at 232-33 (noting that the inquiry into whether detention has become unreasonable "will necessarily be a fact-dependent inquiry that will vary depending on individual circumstances" and "declin[ing] to establish a universal point at which detention will always be considered unreasonable"). At the point the detention becomes unreasonable under the facts of the case, there must be a bond hearing "at which the Government bears the burden of proving that continued detention is necessary to fulfill the purposes of the detention statute." *Id.* at 233. In that respect, the Third Circuit held in *Chavez-Alvarez* that, in the absence of bad faith by the criminal alien,[3] his or her detention without a bond hearing may often become unreasonable by the one-year mark. *See Chavez-Alvarez*, 783 F.3d at 478 ("[B]eginning sometime after the six-

---

[3] *See Chavez-Alvarez*, 783 F.3d at 476 ("An argument could be made that aliens who are merely gaming the system to delay their removal should not be rewarded with a bond hearing that they would not otherwise get under the statute."); *but see K.A. v. Green*, No. 18-3436, 2018 WL 3742631, at *3 (D.N.J. Aug. 7, 2018) ("While it remains true following *Jennings* that 'aliens who are merely gaming the system to delay their removal should not be rewarded with a bond hearing that they would otherwise not get under the statute,' *Chavez-Alvarez*, 783 F.3d at 476, it also remains true that those aliens who are merely pursuing the remedies available to them in good faith should not be penalized for pursuing their legal rights.").

month timeframe considered by *Demore*, and certainly by the time [the alien] had been detained for one year, the burdens to [the alien's] liberties outweighed any justification for . . . detain[ing] him without bond to further the goals of the statute.").

When assessing the reasonableness of detention under § 1226(c) and determining when the tipping point has been reached, this Court considers the reasonableness of the Government's conduct and the *bona fides* of the detainee's challenge to his removal. *Id.* at 477. Moreover, as the length of detention grows, the Court may also consider whether the facility for the civil immigration detention is meaningfully different from a penal institution for criminal detention. *See id.* at 478 ("[W]e cannot ignore the conditions of confinement. Chavez-Alvarez is being held in detention at the York County Prison with those serving terms of imprisonment as a penalty for their crimes. Among our concerns about deprivations to liberties brought about by section 1226(c) is the reality that merely calling a confinement 'civil detention' does not, of itself, meaningfully differentiate it from penal measures. . . . As the length of the detention grows, the weight given to this aspect of his detention increases.").

Here, Petitioner has now been detained under § 1226(c) for 14-plus months. Petitioner's period of detention exceeds the one-year threshold that the Third Circuit found constitutionally suspect in *Chavez-Alvarez*, 783 F.3d at 477. Furthermore, there is no evidence which suggests to this Court that Petitioner is challenging his removal in bad faith. Finally, the Court notes that Essex County Correctional Facility, the jail where Petitioner has been held since June of 2018 (*see* DE 1 at ¶ 4), was recently singled out by the Department of Homeland Security ("DHS") for its "egregious violations of detention standards." *See* DHS's June 3, 2019 Report, *Concerns about ICE Detainee Treatment and Care at Four Detention Facilities*, OIG-19-47, available at https://www.oig.dhs.gov/sites/default/files/assets/2019-06/OIG-19-47-Jun19.pdf.

Given these factual circumstances, the Court finds that due process requires that Petitioner be provided an individualized bond hearing "at which the Government bears the burden of proving that continued detention is necessary to fulfill the purposes of the detention statute." *See Diop*, 656 F.3d at 233; *accord Thomas C. A. v. Green*, No. 18-1004, 2018 WL 4110941, at *5 (D.N.J. Aug. 29, 2018) (ordering bond hearing for § 1226(c) detainee who had been detained for 15 months); *K.A. v. Green*, No. 2:18-cv-3436 (JLL), 2018 WL 3742631, at *4 (D.N.J. Aug. 7, 2018) (finding that petitioner's 19-month detention under § 1226(c) "absent a bond hearing, [had become] so unreasonable as to amount to an arbitrary deprivation of liberty.").

## IV. CONCLUSION

For the reasons stated above, the Court will grant Petitioner's § 2241 Petition. An immigration judge shall therefore be required to provide Petitioner with a bond hearing within twenty-one (21) days, at which the Government bears the burden of showing that Petitioner is either a danger to the community or a flight risk. An appropriate Order accompanies this Opinion.

August 7, 2019             s/ John Michael Vazquez
Date             JOHN MICHAEL VAZQUEZ
           United States District Judge